L.L.C., and we'll hear from Ms. Kidwell. Good afternoon, and may it please the court. I'm Susan Kidwell for iWireless. As the court knows, this is the third appeal in this case, and this one involves issues relating to attorney's fees. iWireless is challenging two different decisions. The first is an order denying iWireless a mandatory award of fees based on the Texas Theft Liability Act claim, or the TTLA claim, and the second is an order awarding transverse fees based on the Texas Civil Practice and Remedies Code. Our arguments are fully briefed, and in my limited time today, I'd like to just highlight three points on each of the main issues. So starting with iWireless's fees, in the last appeal, what we'll refer to as Transverse 2, this court held that iWireless is entitled to a mandatory award of attorney's fees as the prevailing party on the TTLA claim, but on remand, the district court awarded iWireless no fees, and that really raises the three points I'd like to address. The first is that the district court got the standard for segregating attorney's fees completely backwards. The second is that iWireless actually segregated its fees in accordance with the standard imposed by Texas law, and third, even if there was some issue about the manner in which iWireless segregated its fees, the district court had no authority to order a complete forfeiture of fees under the circumstances of this case. So starting out with the segregation standard, the law is clear when, as in this case, there are multiple claims and fees aren't recoverable on all of them, it's undisputed that Texas law requires the fee claimant to segregate fees that, quote, relate solely to a claim for which fees are unrecoverable, unquote. Now, the district court flipped that standard by insisting that iWireless segregate fees that relate solely to the claim for which fees are recoverable, in other words, solely to the TTLA claim, and that's really the fundamental disagreement over the segregation standard. Now, at one level, this may sound like an issue of semantics, but it is not. The district court's approach has a significant impact on the amount of fees that can be recovered because under the district court's view, any fees that do double duty, in other words, that advance both the TTLA claim and other claims, under the district court's review, under the district court's view, those fees are not recoverable. Texas Supreme Court in Tony Gullah Motors said exactly the opposite. It said, in cases with multiple claims arising from common facts, quote, many, if not most, legal fees cannot and need not be precisely allocated to one claim or the other, unquote. And this court has followed Tony Gullah Motors in the Symetra life insurance case as well. Texas Supreme Court also said, as long as fees, quote, would have been incurred on the simply because they do double duty. Now, notwithstanding these principles, some of which were actually cited in the magistrate's own report and recommendation, the district court insisted that iWireless segregate its discrete fees related to the TTL claim only. And because that is the exact opposite of what Texas law requires, the order denying iWireless any fees on the TTLA claim has to be reversed. The second point has to do with iWireless's segregation. And this is just simply shown on the record. iWireless submitted a fee application that is supported by evidence showing that iWireless's counsel reviewed more than 300 pages of invoices, all of which are included in the record. Invoices from over an eight-year period then identified services that would have been necessary to defend the TTLA claim only. Of course, this can include things like filing an answer, showing up at hearings, doing some discovery. There are lots of things that you do in a lawsuit that advance more than one claim. Counsel then went through on an item-by-item basis and segregated out discrete fees related solely to non-TTLA claims. And then finally, counsel went through and made some further reductions just based on principles of reasonableness. So, it's our position that as a matter of Texas law, the evidence submitted in support of our application is sufficient to establish the amount of fees recoverable on the TTLA claim and that no additional segregation was required. And you're agreeing that Texas law applies here? Yes, to the TTLA claim, not to the breach of supply contract claim. But that's a separate issue. So, yes, the Texas law does apply to the TTLA claim. Third point has to do with forfeiture. And this is just simply the point that the district court adopted the magistrate's recommendation that, quote, I-Wireless is not entitled to recover attorney's fees due to its failure to segregate recoverable from unrecoverable fees, unquote. But as I just explained, I-Wireless painstakingly went through and did attempt to segregate fees. And under these circumstances, this isn't a failure to segregate case. And because it's not, the district court had no discretion to deny fees altogether. And I think this is especially true when there's an award, when an award is mandatory under the TTLA and when this court specifically remanded for an award of fees under the TTLA. So unless there are any questions on I-Wireless fees, I'd like to spend the rest of my time on the issue of transverse's fees. The background on this is pretty straightforward. There were five claims in this case, and transverse only prevailed on one of them, its claim for breach of the supply contract. Now, the district court awarded transverse more than $2 million in attorney's fees on that claim based on the Texas Civil Practice and Remedies Code. Again, I've got three points. The first is that transverse can't recover fees under Texas law because the supply contract is expressly governed by Iowa law. And Judge Smith, this sort of gets back to the question you previously raised. Choice of law issues are done on an issue by issue basis. So the choice of Texas law for the TTLA claim doesn't mean that Texas law applies to all claims. Where is it in the district court that you claim that Iowa law applies rather than Texas? Actually, that's my second point, and I'm happy to address it first. We made that claim in each of our live pleadings. We made it in our pre-trial motions for partial summary judgment. There were a couple of those. We made it in our Rule 50 motions. We submitted proposed jury instructions and a verdict based on Iowa law and based on the Iowa civil jury instructions. And then we opposed each of transverse's motions for attorney's fees based on an argument that the supply contract is governed by Iowa law and that Iowa law doesn't permit an award of fees. So with respect to the breach of supply contract claim, we were crystal clear early and at every juncture, we reiterated our position that Iowa law governs the supply contract claim. And when we finally got to the issue of attorney's fees, we were clear that Iowa law does not permit an award of attorney's fees and certainly not under the Texas Civil Practice and Remedies Code. Was the choice of law issue raised in transverse two? You know, it was sort of. After the first time the district court actually made a statement on choice of law applicable to the supply contract claim was on remand after transverse one. And the district court made a statement saying that the supply contract is governed by Texas law. And we objected to that. In fact, we moved to get the court to amend its judgment after transverse one to reflect that the supply contract is governed by Iowa law. District court declined to do that. So in transverse two, we took that issue up and we actually asked this court to rule on that issue. And there's a footnote in transverse two that really sort of addresses it. But the bottom line is that the supply contract, you don't get to a conflict of laws until you get to the issue of attorney's fees. So with respect to all of the issues that came up in the first appeal and the second appeal, you know, what are the elements of a breach of contract claim? What are the measures of damages? What's the standard for sufficiency of the evidence on review? All of those issues, it's the same analysis under Texas law or Iowa law. So there was no conflict. There was no sort of basis for any court to reach the issue. And in fact, in that second footnote, this court said, you know, there's no conflict right now. We can't reach the issue. We were actually just arguing, look, this is going to be a conflict when we get to the issue of attorney's fees. Fifth Circuit, you know, please make a ruling to kind of facilitate matters on remand and avoid a third appeal. But I think the court, you know, properly declined to reach the issue because it hadn't really been raised below yet or been able to be reached below. So we get back on remand, and that was the first opportunity for the district court to grapple with the choice of law issue. And it just simply said, Texas law applies to the supply contract. Now, that actually sort of takes me back to the sort of substance of our argument. I mean, I think the issue is clearly preserved. And in addition to all the places I've just mentioned in the record where we raised the issue, I will tell you that Transverse is not going to be able to cite to a third appeal a single place in the record, and this court won't find one where we ever said that the supply contract is governed by Texas law. We never took that position. With respect to the merits of this issue, again, the only choice of law issue that's before this court right now is what law governs Transverse's claim for attorney's fees based on the supply contract. The contract itself expressly states, quote, this contract shall be governed and construed by the laws of the state of Iowa, period. That's an unambiguous choice of law provision that requires the application of Iowa substantive law, and that includes not just the breach of contract claim itself, but also the issue of attorney's fees under it. Now, iWireless brought this specific issue to the district court's attention when we got to the issue of attorney's fees, where the first real conflict of law issue arose. And I would really urge the court to look at page 8703 of the record, because this is the magistrate's discussion of the choice of law issue, and I think it shows where the analysis really got off of its tracks. The magistrate starts out and it says, in Transverse 2, the Fifth Circuit didn't rule on the choice of law issue because there was no conflict, you know, with respect to any of the issues before the Fifth Circuit, and that's correct. The court then said, Texas and Iowa contract law don't conflict, except as to the issue of attorney's fees. That's also correct. But then the court said, since the Fifth Circuit didn't rule, the magistrate was, quote, left with Judge Yackel's consistent ruling that Texas law applies to the supply contract, and that's completely wrong. That's where things got off track. There was only one prior ruling on a choice of law issue relating to the supply contract, and that was the statement made after Transverse 1 and the first remand, and that was the statement that iWireless tried to challenge in Transverse 2. Um, so then when we finally get back at the second remand and the district court finally takes up the issue of attorney's fees because all the issues on the merits had been resolved, we've got this conflict in law, a conflict of laws issue clearly presented, and under the court's own analysis in Transverse 2, if there's a conflict, you actually do need to reach the choice of law issue. But instead of conducting any kind of analysis, the district court just awarded fees based on Texas law, just circled back and said, well, the contract's governed by Texas law. Well, it's clearly not. So, you know, that's the merits of the case of the choice of law issue. I'd like to point out just two or clarify two potential points of confusion, um, just so that the court doesn't, um, get confused. First, Transverse refers to a concession that iWireless supposedly made, um, that Texas law applies. And that concession, which is on page 827 of the record, that actually is an emotion for partial summary judgment that relates to entirely different claims. Again, choice of law is issue by issue. The fact that Texas law governs some of the claims does not mean that we've ever conceded that Texas law applies to the supply contract. We never did. We consistently said Iowa law. Um, and second, I would just point out at the very start of the court's footnote in Transverse 2, the one talking about the choice of law issue, um, the court actually wrote, quote, iWireless contends that Texas law should govern issues, including attorney's fees arising out of the supply contract. That statement is actually incorrect. Um, the record and the appellate briefing from Transverse 2, which is also included in this record, they clearly show that Transverse was the one arguing for Texas law, and iWireless was the one arguing for Iowa law. So I just don't want this panel to go back and look at that footnote and say, well, wait a minute, iWireless said that they, um, you know, were arguing for Iowa law, and this footnote says the opposite. The footnote's actually incorrect, and we brought that up on rehearing. Um, my final point on this was just going to be that law of the case doctrine doesn't apply, but I see that I'm just about out of time, so I can pass on that unless the court has any questions. Yes, you've saved time for your vote, Ms. Kidwell. Thank you, Judge Smith. Mr. White. Thank you, Your Honor. May it please the court. I'm Raymond White. I'm the attorney for Transverse LLC. I will address, uh, the iWireless's two appellate points, the denial of their attorney's fees and the granting of Transverse's fees, and if I have time, I'll address our appellate points. The district court did not abuse its discretion in denying iWireless's fees. The district court denied the fees on a factual basis and applied the correct legal standard, namely, iWireless's failure to properly segregate its fees factually between recoverable and unrecoverable fees, and thus its failure factually and legally to meet its burden of proof. The three points that Ms. Kidwell recited, we disagree with each one of those, and I will explain why. The standard of review is abuse of discretion. The trial court used the correct legal standard. The trial court quoted, in its opinion, in adopting the magistrate's recommendation, the Texas Supreme Court standard in the Tony Guyot case, quoting, claim it must segregate recoverable from unrecoverable fees, and if fees are sufficiently intertwined, they need not be segregated. That's the absolute proper legal standard under Texas law. In denying iWireless's fees, the trial court said, and I'm quoting, segregation by iWireless of the legal work performed on each claim is required if it is not an impossible task factually. And then that's absolutely the Tony Guyot standard regarding the lack of need to segregate if the fees are inextricably intertwined and cannot be segregated factually. Contrary to iWireless's appeal, the trial court did not require iWireless to prove up only purely TTLA fees without any intertwining whatsoever. That's quite the opposite. And I'm going to explain factually what the court did. There was no twisting or inversion of the legal standard or of the mandate. And unfortunately, iWireless fails to read the entire opinion. The trial court's factual determination, and I note to the court, this is iWireless's second chance to get it right. The trial court denied their first application after the second appeal and gave them another chance to get it right. And what the court said in ultimately denying it, this is a quote, quote, several avenues to segregate were available to iWireless, but iWireless chose not to make any attempts to meet it, any attempt to meet its burden. Further quoting, iWireless affirmatively refused to try to carry its burden. And then the court stated segregation was not an impossible task factually, as there were many approaches iWireless could have taken to meet its burden. This is all a factual determination well within the trial court's abundant discretion on this issue. And what the trial court was referring to was the many evidentiary defects in iWireless's proof that I set out in my app, Controverting Affidavit, and that the magistrate recited in a footnote involving the inclusion of solely breach of contract fees and disclosure claim fees unrelated to TTL claim. And what iWireless did in the trial court is they presented no evidence whatsoever to the trial court explaining these and other defects. And for the first time on this appeal, they present arguments, not evidence, but arguments on some of the defects. And what their arguments show, they highlight that this was a factual dispute within the trial court's discretion to resolve. A couple of examples that we pointed to the trial court, and there are many examples. They seek 367,000 fees allegedly on the TTLA claim that they incurred over 18 months while reviewing 3 million pages of breach of contract documents that both parties produced. There were no disclosure documents in those documents at all. Some total of disclosure documents in this case was about 240 pages, all within iWireless possession. And during those 18 months, they're trying to tag us with TTLA fees. iWireless withheld those documents. It didn't produce them to us. And they also, in one of our interrogatories, falsely stated they didn't disclose any material that we provided to them to IDI, our competitor. They basically lied in discovery and withheld the documents, but their fee application is trying to get $367,000 supposedly relating to the TTLA while they engaged in the discovery disputes, this dispute. They claim now in their brief, again, no controverting evidence, that those are proper fees because we alleged a TTLA violation. By the way, we alleged it on information and belief because we didn't have evidence of it. And that's not a basis for claiming TTLA fees. If that were the standard, there would never be any segregation in a case because the mere pendency of a claim would allow the other party to claim fees for anything it does. What the test is to what was the actual work they did, not what claims are pending. They also seek $60,000 in fees to depose Trans v. Cleveland Howitt, an employee, even though in that deposition they asked only two questions of Mr. Howitt about the disclosure claims and that trial they asked him no questions about the disclosure claims. Mr. Howitt was a contract witness primarily. They argue in their brief to this court, well, this is justified because Trans v. had designated Mr. Howitt not only as a witness on the contract, but that he might also testify regarding the disclosure claims. Well, they don't challenge our point that there are only two questions in that deposition relating to the disclosure claims. And I can assure the court, those questions were not $60,000 questions. They also include in their fee application almost $10,000 in fees for a countersuit they of contract. There was no claim about disclosure whatsoever. But they include that in the TTLA column. They also claim full fees. Anyway, they claim full fees for analyzing Trans v. technical and damage expert reports that had only placeholders in them because they had withheld this discovery from us. We had no discovery on the disclosure claims, TTLA or anything during this time. Our experts had to leave placeholders hoping we would get evidence. We didn't get it for about three months later, about 18 months after our discovery request asking them for this information. And of the technical report, 91% of it based upon the page content and concerned only the breach of contract claim. And of the damage expert report, 96% of that report claim involved only contract, breach of contract claims. Iowa IRS has given no response on this appeal to the $10,000 in Iowa. No response on the full fees for reviewing these expert reports. Of their trial exhibits, your honors, of their 628 trial exhibits, which is an awful lot, 624 or 96% related solely to the contract claim. And only 22 of those exhibits or 4% related to the disclosure claims globally. Yet they're seeking 50% of their fees in this lawsuit. Another point, the magistrate pointed this out in his recommendation, their initial fee application sought attorney's fees for all the disclosure claims. Their amended fee application allegedly did not include that. They supposedly took out the non-TTLA disclosure work. But remarkably, in the words of the magistrate, the attorney's fee number was the identical to the dollar. All of these and other evidentiary defects remained in their amended fee application. And despite getting a second chance by the trial court, they thumbed their nose at the trial court. And none of these examples involving flipping the segregation standard or requiring purely TTLA claims. They're evidence that clearly is trying to recover the large part of this case. Most of this case involved a breach of contract. Absolutely. And my controverting affidavit that I submitted explains all that. All of these examples and others disprove the bald conclusory and false statements in the Sidney Powell affidavit and their other affidavits regarding their supposedly having segregated. And the trial court had ample discretion to reject those false statements. They also, Your Honor, in our response to their fee application, we also disproved their TTLA fees from the other direction by analyzing their actual work output. And in doing that, we grouped the four or so disclosure claims together and determined at most, at most, only 21% of their work involved the disclosure claims. And that analysis, and I need to emphasize this to the court, that ignores their lack of segregation and it ignores the excessiveness of their fees, which would probably, if you factor those in, would probably reduce their fees down to zero for lack of proof. Uh, lastly, Your Honors, the trial court's denial of their fees could be upheld on the evidentiary attacks that we submitted by evidence under the Lodestar analysis. That involves showing how their fees are excessive, how they had too many lawyers on this case. Even after writing off about six lawyers, they still had too many lawyers on this case. They disproportionately used partners and counsel on the case, and the partners and counsel that they did have hoarded about 90% of the work on this case. All of those are excessiveness contrary to the Lodestar analysis. They had, they've had four tries in this case to meet their burden of proof on their fees. They've submitted two fee applications early in the case back when they were trying to about 60% of their fees. And then more recently, the two that the Judge Yackel allowed them to submit to see if to try to let them get it right. Each time transverse objected to their application on the same grounds that they're including breach of contract work that should be segregated out there, including other claims that can that don't have common elements with the TTLA claim. And each time they didn't correct it, even to the last one they did, they still haven't corrected it. The problem we submit is that the, their goal in their fee application is to maximize the offset to our recovery and our attorney's fee award, rather than trying to legitimately prove up TTLA fees. Uh, the, the trial court did follow this court's mandate. And even with the mandate, they still had to prove reasonable and necessary attorney's fees and properly segregate. It's not a carte blanche that they can submit a conclusory affidavit, which is what they did and get whatever they submit. We met our burden to show that they failed to segregate. Once, and they were, they were, uh, it was their burden to, uh, prove that their so-called segregation was sufficient. Uh, the trial court had ample discretion to deny their fees, particularly after giving them a second chance over our objection court trial court still gave him a second chance. And, and after I wireless still refused to segregate or correct their, their, the defects and the kit, this court's decision in the Harvey V. Caesar's case, uh, and other court decisions by this court justify the denial, the, the total denial of their fee application, because they had multiple opportunities to segregate and refuse to do so. And I might point out your honor, the Texas Supreme court recently in the roar, roar moose case, clarify the procedure for Texas proving up fees and, uh, showed that the, uh, the court's a two-step process. You determine the reasonable hours spent times, a reasonable rate, and then adjust it up or down for other relevant factors. Well, the trial court here couldn't even get past the first step determining a reasonable hour spent because they didn't prove up the proper segregation. They didn't segregate. They said they did, but they didn't. And these examples, these blatant examples, we pointed out, make that clear. Uh, it was their burden of proof, not the trial courts. And they did not meet it after several chances. And, uh, the court should uphold that finding. I'd like to address the granting of transverses fees. Uh, the law of the case in this case, since 2012 has been Texas law governs all substantive issues, all substantive claims. In this case, that necessarily includes attorney's fees, but the trial court rule pre-trial in the order on cross motions for summary judgment. Mr. White, what do you do with the fact that you're an LLC? Oh, uh, I, Texas law, we, we, as the court knows, we submitted a file, the motion to the trend of law change in Texas. Some courts since about 2016, uh, rule that, uh, have ruled that attorney's fee statute doesn't apply to LLCs, but that, uh, as the trial court found and the magistrate found in our case, the Texas Supreme Court has not ruled on that issue, has not changed the law and they cannot, that's an issue that we raised in the motion to amend. They remain completely silent in the trial court on that issue on the motion to amend. They did not raise it as error. They didn't breathe, make the argument they've made to this court. What they instead said was it was irrelevant and a red herring. In other words, trial court, there's nothing for you to decide here. Do you agree that you're neither an individual nor a corporation? Yes, sir. The LLC and they, they filed, uh, they filed an application for NDA attorney's fees after the trial before the first appeal on, uh, against us, even though they hadn't even pled NDA fees, trying to get NDA attorney's fees against transverse, which is also an LLC because the law back then was not, it was, you know, the Supreme Court, Texas Supreme Court had already held. You could get attorney's fees under that statute against the partnership, which is neither an individual nor a corporation. So, uh, as we pointed out in our appeal, uh, the, the one, one thing is good. Well, say it said that trial court never said it was on the contract claim. That's not true. Record on appeal 6348 on order on our moat on motions for judgment on after the first remand court said, because this court is sitting in diversity, Texas law governs the court's analysis on transverses, breach of contract claim. And then they, as we pointed out, they waived twice and the first appeal and a second appeal, this issue, they never raised it. They didn't explain, uh, the, any difference between the two state laws as attorney's fees. So they've waived it. And they're also judicially a stop from being able to raise it because they were allowed to amend. All right. Your time now has expired. Mr. White. Yeah. Thank you. Ms. Kidwell, you save time for a vote. We are challenging the availability of legal fees and the segregation standard. Those are both questions of law that are reviewed de novo under this court's precedent that we've cited in the brief. If we were quibbling about the amount of the fee that had been awarded to us, that would be an abuse of discretion review. But when you're at threshold legal issues as to whether we can recover fees at all and if so, what's the proper legal standard for segregation? Those are legal issues. The standard is de novo. With respect to the legal standard, um, Tony Gullah Motors is clear. And I would just ask the court to match up what we did, what Tony Gullah says, and what the district court did. You know, as a matter of law, fees that are arising from common facts cannot and need not be precisely allocated. Okay. Services that would have been incurred on a recoverable claim alone are not disallowed simply because they do double service. Okay. Segregation is only required for fees that relate solely to a claim for which fees are unrecoverable. Okay. Attorneys aren't required to keep separate records. An opinion stating that some percentage of fees would have been necessary, even if no recoverable claims had been brought, that would suffice. The court is clear. Rough percentages are okay. Now, Sidney Powell went on a line by line, item by item basis and tried to actually follow a much more exacting methodology. But it would have been enough to just simply have an affidavit saying, you know, in my opinion, about 50% of these fees would have been necessary. Um, you know, if you get to the point where we're, oh, so I guess I would also just say, have a look at the Powell affidavit. And it shows that she also matched up exactly with the standard. She went through, identified what fees would have been necessary to defend only the TTLA claim. And she made it clear that she was pulling out the fees that are unrecoverable. So there is truly a disagreement as far as what you're supposed to be segregating from what. The district court kept saying, you've got to pull out the TTLA claims only. We were explaining, no, we've pulled out the unrecoverable claims. We think that the rest since Sydney, but we've got statement in the record saying that the rest advanced both claims. Those are recoverable. So that's truly the segregation standard issue. Um, transverse spent most of its argument quibbling about various factual amounts as to whether we should get to recover this line item or that. I would just remind the court of two things. First transverse asserted multiple claims in this lawsuit. One of them was the TTLA claim, and that's been in the case from the very beginning. So for them to come in after the fact and say, oh, well, we didn't need to review all of these documents because none of them had anything to do with the TTLA claim. How do we know that they're the ones that brought the claim? So they need to now pay for it. The second point that I was going to make on that is we are not asking this court to go line by line and consider all of transverse is quibbling about individual amounts. We think that because of the flipping of the legal standard, the orders got to be reversed. To me, the hardest question for you is whether to render judgment in our favor based on the amount proven up by the Powell affidavit or whether to remand and let the district court for the first time consider some of these complaints about the amount. Remember, the district court never got that far because it kept insisting that we apply Texas law in a manner that we thought was the opposite of what Texas law applied. So that's some just quick comments on I-wireless fees. With respect to transverse fees, the pretrial ruling on Texas law governing substantive issues, that was made with respect to a quantum merit claim. That claim has been out of the case for a while. Again, there are multiple claims. Choice of law determinations are made on an issue by issue basis. So the fact that there was a ruling early on that Texas law governs the quantum merit claim, that cannot overcome the plain language in the contract, the supply contract, saying that that contract is governed by Texas law. And Judge Smith, we don't think the court needs to get this far. But at the end of the day, the Texas Civil Practice and Remedies Code has had the same language since 1986. And it does not allow an award against, it only allows recovery against an individual or a corporation. So that by itself would be a bar. Transverse says, well, we were also seeking fees under the NDA. The NDA allows fees to be recovered by the contract. So that's really sort of neither here nor there. And just a final point, the law of the case ruling that they're pointing to on the second remand, that's exactly what I was talking about in my argument, page 6682 of the record or whatever. That was the one that we asked you to look at in Transverse too, and you didn't. Because this court didn't make a ruling on law of the case. Your time expired now. I'm sorry. Thank you. Thank you, Your Honor. Time has expired and your case is under submission and the court is in recess until 1 o'clock tomorrow.